## STATE OF CONNECTICUT *v.* JORGE JIMENEZ
## (14737)

PETERS, C. J., CALLAHAN, BERDON, KATZ and PALMER, Js.

Argued October 28, 1993—decision released January 18, 1994

*Joseph G. Bruckmann,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gerard P. Eisenman,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Jorge Jimenez, was convicted by a jury of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] He was sentenced by the trial court to a term of imprisonment of twelve years. He appealed his conviction to the Appellate Court claiming that the trial court had "improperly instructed the jury as to the 'initial aggressor' exception to the law of self-defense in light of the evidentiary basis for the claim of self-defense he raised." *State* v. *Jimenez,* 30 Conn. App. 406, 407, 620 A.2d 817 (1993). The Appellate Court concluded that, in light of the trial court's charge as a whole, it was not reasonably possible that the jury had been misled by the portion of the charge to which the defendant objected.[2] Consequently, that court affirmed his conviction. Id., 415. We granted certification to review the merits of this conclusion. *State* v. *Jimenez,* 225 Conn. 916, 623 A.2d 1026 (1993).[3]

The evidence that led to the defendant's conviction is set forth in the opinion of the Appellate Court; *State* v. *Jimenez,* supra, 30 Conn. App. 407–409; and need not be repeated at length. For the purposes of this

---

[1] General Statutes § 53a-59 provides in pertinent part: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] The Appellate Court in its opinion did not specifically state that the "initial aggressor" instruction given by the trial court was improper.

[3] In its entirety, the certified question reads as follows: "In a trial for assault in the first degree where the defense presented evidence that the defendant's use of deadly physical force was based on his reasonable belief that the victim was about to use deadly physical force against him, and the trial court erroneously instructed the jury that notwithstanding the provisions of General Statutes § 53a-19 (a), a claim of self-defense would be defeated if the defendant was the first person to use physical force, did the Appellate Court correctly conclude it was not reasonably possible for the jury to have been misled?" *State* v. *Jimenez,* 225 Conn. 916, 623 A.2d 1026 (1993).

appeal, it is sufficient to note that the defendant and the victim, Thomas Comacho, lived in separate apartments in the same building at 596 Pembroke Street in Bridgeport. There was bad blood between the defendant and both the victim and the victim's brother, Israel Comacho. On August 18, 1984, while the victim, who lived on the third floor of the Pembroke Street building, was in the hallway outside the defendant's second floor apartment, the defendant emerged from his apartment and shot the victim in the left leg with a sawed-off shotgun, causing a serious wound. The defendant admitted that he had shot the victim, but raised a claim of self-defense.

The defendant's claim of self-defense was supported principally by his own testimony at trial. He testified that on August 16, 1984, two days before he had shot the victim, the victim and his brother had challenged him to come out of his apartment and had fired six shots in his direction when he had done so. He stated that the incident of August 16, combined with both warnings that he had received from his girl friend and other actions of the Comachos, led him to believe that the Comachos intended to kill him. He testified further that when he had heard the victim in the hallway outside his apartment door, he had believed that the victim had come for him and was armed. He claimed consequently that when he had opened his apartment door and had shot the victim, he had been justified in doing so because he had reasonably believed that the victim had been about to use deadly physical force or about to inflict great bodily harm upon him.

The trial court apparently agreed with the defendant that he had a colorable claim of self-defense and charged the jury on that theory.[4] In the course of its

---

[4] The Appellate Court noted in its opinion: "The issue in this appeal is not whether there was sufficient evidence to support a jury instruction on

charge, the court instructed the jury: "On the law of self-defense, the law recognizes certain exceptions to the justification of the use of physical force as self-defense, and in this case specifically, the use of deadly physical force. Those were earlier referred to as subsections (b) and (c) of § 53a-19. . . .

"Subsection (c) insofar as is applicable to this case states as follows, that again, 'Notwithstanding the provisions of subsection (a), that a person is not justified in using physical force when he [meaning the defendant], was the aggressor.' This exception presents a question of fact for you to determine. *Thus, if you find proven beyond a reasonable doubt that the defendant was, in fact, the aggressor, meaning that he was the first to use physical force, then the state has succeeded in disproving the defense of self-defense.*"[5] (Emphasis added.)

self-defense. The sole issue is whether the trial court improperly instructed the jury as to the 'initial aggressor' exception to General Statutes § 53a-19 (a), which is contained in General Statutes § 53a-19 (c)." *State* v. *Jimenez*, 30 Conn. App. 406, 409, 620 A.2d 817 (1993).

[5] General Statutes § 53a-19 provides in pertinent part: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. . . .

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

The defendant excepted to the above portion of the trial court's charge in a timely fashion. In taking his exception, he stated that the court had incorrectly defined an aggressor as "the first to use physical force." The court, however, declined to reinstruct the jury. Subsequently, the defendant filed a motion for a new trial claiming that the court's instruction was incorrect under § 53a-19 (a) (1) and (2), which permit the use of deadly physical force against another who is "about to use deadly physical force" or "about to inflict great bodily harm." He argued that the trial court's instruction had deprived him of his right to present a defense and to due process of law. The trial court denied his motion and the defendant duly excepted.

" 'A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . .' " *State* v. *Adams,* 225 Conn. 270, 283, 623 A.2d 42 (1993), quoting *State* v. *Belle,* 215 Conn. 257, 273, 576 A.2d 139 (1990). "This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." *State* v. *Miller,* 186 Conn. 654, 660–61, 443 A.2d 906 (1982). "The standard of review to be applied on this constitutional claim is whether 'it is reasonably possible that the jury were misled.' *State* v. *Corchado,* [188 Conn. 653, 660, 453 A.2d 427 (1982)]." *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984); *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989).

Except in circumstances manifestly not present in the present case, a person is not justified in using physical force in self-defense if he is the initial aggressor. See General Statutes § 53a-19 (c) (2). Therefore, if the jury found that the defendant was the aggressor in his

encounter with the victim, he could not prevail on his claim of self-defense. *State* v. *Silveira,* 198 Conn. 454, 469, 503 A.2d 599 (1986). The trial court made it impossible for the defendant to prevail on his claim of self-defense under the facts of this case when it instructed the jury that if it found "proven beyond a reasonable doubt that the defendant was, in fact, the aggressor, *meaning that he was the first to use physical force,* then the state has succeeded in disproving the defense of self-defense." (Emphasis added.) See General Statutes § 53a-12 (a).[6] The undisputed facts at trial were that the defendant had been the first to use physical force when he shot and wounded the victim. Moreover, the defendant admitted in his testimony that he had been the first to use actual physical force. The effect of the court's instruction, therefore, was to take away with one hand the defense it had permitted the jury to consider with the other.

It is not the law, however, that the person who first uses physical force is necessarily the initial aggressor under § 53a-19 (c) (2). See *State* v. *Silveira,* supra, 469; *State* v. *Tyson,* 23 Conn. App. 28, 37, 579 A.2d 1083, cert. denied, 216 Conn. 829, 582 A.2d 207 (1990). To attach such a meaning to § 53a-19 (c) (2) would run counter to the plain language of § 53a-19 (a), which states in pertinent part that "a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or *imminent* use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other per-

---

[6] General Statutes § 53a-12 provides: "DEFENSES; BURDEN OF PROOF. (a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt."

son is (1) using or *about* to use deadly physical force, or (2) inflicting or *about* to inflict great bodily harm." (Emphasis added.)

A court should accord a statutory enactment its plain meaning. *Kilpatrick* v. *Board of Education,* 206 Conn. 25, 28, 535 A.2d 1311 (1988); *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). Moreover, the meaning of statutory language must be determined from a reading of the statute as a whole. *State* v. *Williams,* 206 Conn. 203, 210, 536 A.2d 583 (1988). Read according to its plain language, and as a whole, doubtlessly § 53a-19 contemplates that a person may respond with physical force to a reasonably perceived threat of physical force without becoming the initial aggressor and forfeiting the defense of self-defense. Otherwise, in order to avoid being labeled the aggressor, a person would have to stand by meekly and wait until an assailant struck the first blow before responding. If an assailant were intending to employ deadly force or inflict great bodily harm, such an interpretation of the statute would be extremely dangerous to one's health. Such a bizarre result could not have been intended by the legislature. "The law favors a rational statutory construction and we presume that the legislature intended a sensible result." *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985).

Because the trial court's definition of "aggressor" in its instructions was incorrect, we must determine whether it is reasonably possible that the incorrect definition misled the jury. *State* v. *Grullon,* supra. We have reviewed the trial court's entire charge. Other than the single instruction to which the defendant excepted, the court correctly stated the law of self-defense. At other points in its charge, the court properly focused the jury's attention on the reasonableness of the defendant's belief that the victim was about to use deadly force or inflict great bodily harm upon him to guide the jury

in making its determination as to whether the defendant was justified in his actions. The court also informed the jury that, if the defendant reasonably believed that the victim was about to use deadly physical force or inflict great bodily harm upon him, he could respond with deadly force and that the state had the burden to disprove his defense beyond a reasonable doubt. The instruction that, by virtue of the undisputed facts, conclusively designated the defendant the initial aggressor was, however, never explicitly corrected or retracted.

The trial court's definition of "aggressor," therefore, remained for the jury's consideration and could have been instrumental in its determination that the defendant had not presented a viable claim of self-defense. " 'The jury are presumed to follow the court's directions in the absence of a clear indication to the contrary.' *State* v. *Griffin,* 175 Conn. 155, 160, 397 A.2d 89 (1978); *State* v. *Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984); *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980)." *State* v. *Negron,* 221 Conn. 315, 331, 603 A.2d 1138 (1992). As in *State* v. *Corchado,* supra, 667, the trial court's instruction "fairly construed, foreclosed the defendant from his right to have the jury pass upon his claim of self-defense under § 53a-19." Even in the context of the court's entire charge, we cannot say with any degree of confidence that language as dispositive as the court's definition of "aggressor" failed to have an impact on the jury. We conclude consequently that it is reasonably possible that the trial court's definition of "aggressor" misled the jury in its deliberations concerning the defendant's claim of self-defense. The defendant is therefore entitled to a new trial. See *State* v. *Grullon,* supra, 205–206.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for a new trial.

In this opinion the other justices concurred.