STATE OF CONNECTICUT *v.* JUAN CARTAGENA
(AC 15894)

Foti, Lavery and Healey, Js.

Argued October 1—officially released December 23, 1997

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Donald A. Browne*, state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Juan Cartagena, appeals from the judgment, rendered after a jury trial, convicting him of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1] On appeal, the defendant claims that the trial court (1) improperly instructed the jury on self-defense, (2) improperly instructed the jury on manslaughter in the first degree as a lesser included offense of murder, and (3) failed to instruct the jury that self-defense was a defense to the lesser included offenses. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 27, 1994, the defendant, the defendant's mother, and the victim, Robert Feliciano, were engaged in an argument over a bottle of beer that the defendant's mother claimed the victim had stolen from the store belonging to her and the defendant's stepfather. The defendant carried a cane that held an eighteen inch knife. A struggle between the defendant and the victim ensued. The defendant initiated physical contact with the victim by striking him with the cane in an attempt to take the beer from him. The defendant delivered blows to the victim's upper body and one blow to the

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

right side of the victim's head. As the defendant struck the victim, he threatened to kill the victim if he came to the store again. The defendant then slashed the victim on the left side with his knife, cutting him and causing him to fall. The defendant then fled from the area.

The victim was found lying on his back in the street by a Bridgeport police officer. The victim was bleeding from his face and his left side. An autopsy of the victim was performed by Thomas Gilchrist, the associate state medical examiner. Gilchrist testified that he observed a stab wound to the left chest, a cut of the right ear, and abrasions or scraping injuries of the face and of the right elbow. In his opinion, the victim died of a stab wound to the chest.

I

The defendant first claims that the trial court improperly instructed the jury on self-defense when it stated that "the use of self-defense does not imply the right of attack in the first instance or in mere retaliation. By definition, self-defense means the use of defensive force." The defendant argues that in this case, where he admitted that he attacked the victim first, the instruction given to the jury deprived him of his constitutional rights to present a defense and to due process of law. We disagree.

The defendant testified at trial that he pushed and struck the victim with a cane and then turned around to walk away from the victim. The defendant claimed that after he turned around he was struck in the head by the victim with a pair of vise grips. The defendant further claimed that it was that blow from the victim that caused him to slash the victim with his knife.

The defendant did not properly preserve this claim for appellate review, but seeks review under *State* v. *Golding*, 213 Conn. 232, 239–40, 567 A.2d 823 (1989).

The defendant can prevail on his unpreserved constitutional claim only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986); *State* v. *Manfredi*, 17 Conn. App. 602, 621, 555 A.2d 436 (1989), aff'd, 213 Conn. 500, 569 A.2d 506, cert. denied, 498 U.S. 818, 111 S. Ct. 62, 112 L. Ed. 2d 37 (1990).

"[The defendant's] fundamental right to present a defense includes a proper instruction on the elements of self-defense." *State* v. *Williams*, 25 Conn. App. 456, 463, 595 A.2d 895 (1991). Because the defendant's claim is of constitutional magnitude and there is a record sufficient for review, we will review it. The claim fails, however, under the third prong of *Golding*.

"In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result." (Citations omitted, internal quotation marks omitted.) *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993).

The defendant argues that the trial court's instruction to the jury on self-defense, "by virtue of the undisputed facts, conclusively designated [him] as being the initial attacker or aggressor." The defendant claims that the

instruction made it impossible for him to prevail on his claim of self-defense and, therefore, that he is entitled to a new trial under *State* v. *Jimenez*, 228 Conn. 335, 342–43, 636 A.2d 782 (1994). We do not agree.

In *Jimenez*, the challenged jury instruction concerned the trial court's definition of "aggressor." Specifically, the following language was at issue in *Jimenez*: "Thus, if you find proven beyond a reasonable doubt that the defendant was, in fact, the aggressor, meaning that he was the first to use physical force, then the state has succeeded in disproving the defense of self–defense." Id., 338. The language at issue in *Jimenez* does not appear in the instructions at issue in this case.

In the course of its charge, the trial court instructed the jury: "The use of self-defense does not imply the right of attack in the first instance or in mere retaliation. By definition, self-defense means the use of defensive force. Therefore, a person claiming this right must act honestly and conscientiously and not from anger, malice or revenge. He must not provoke or intentionally bring the attack upon himself in order to provide an excuse to use force against another person. If the defendant is the initial aggressor, his use of physical force upon another person is justifiable under such circumstances if he withdraws from the encounter and effectively communicates to the other person his intent to withdraw, but the other person, notwithstanding, continues the struggle or threatens the use of physical force. In other words, the initial aggressor must withdraw or abandon the conflict in such a way that the fact of withdrawal is perceived by his opponent so that his adversary is aware that he no longer is in any danger from the original aggressor." That instruction does not include the language challenged in *Jimenez* and is legally correct.

In *State* v. *Tate*, 34 Conn. App. 610, 614–16, 642 A.2d 1223, cert. denied, 231 Conn. 907, 648 A.2d 159 (1994), this court upheld the use of language similar to the language challenged here. This court concluded, "It is clear that the jury was adequately informed of the applicable law dealing both with the defendant's belief that he faced imminent danger, and with the legal theory of initial aggressor." Id., 615–16.

Our review of the charge as a whole leads to the conclusion that there is no reasonable possibility that the jury was misled. We conclude that these instructions were correct in law, that no injustice resulted and that the defendant was not denied a fair trial.

## II

The defendant next claims that the trial court improperly charged the jury on intentional manslaughter as a lesser included offense of murder. The state requested that the trial court instruct the jury on the lesser included offenses of intentional manslaughter in the first degree under General Statutes § 53a-55 (a) (1), reckless manslaughter in the first degree under General Statutes § 53a-55 (a) (3), and reckless manslaughter in the second degree under General Statutes § 53a-56.

The defendant argues that the state failed to satisfy the requirements of *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). "A [party] is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate

the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.

"[I]t is clear that any lesser degree of homicide may be considered by the trier, subject to the requirements of *State* v. *Whistnant* [supra, 179 Conn. 585]." *State* v. *Masselli*, 182 Conn. 66, 72, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981). It has been "often reaffirmed that manslaughter in the first and second degrees and criminally negligent homicide are lesser included offenses within the crime of murder. *State* v. *Herring*, [210 Conn. 78, 105 n.25, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989)]; *State* v. *Rodriguez*, 180 Conn. 382, 407, 429 A.2d 919 (1980); see General Statutes § 53a-45 (c)." *State* v. *Edwards*, 214 Conn. 57, 63, 570 A.2d 193 (1990).

Because the defendant admitted killing the victim, the only substantive issue before the jury was his mental state at the time of the stabbing. The defendant relied on the defense of self-defense to justify his actions. "Lack of the requisite intent for murder, however, does not necessarily relieve the defendant of criminal culpability. Rather, specific intent provides the critical distinction between murder and the requested 'lesser included homicides that require a less serious degree of culpable intent.' *State* v. *Rodriguez*, supra, [180 Conn. 405]; see also *State* v. *Burge*, 195 Conn. 232, 244–45, 487 A.2d 532 (1985); *State* v. *Falby*, 187 Conn. 6, 29, 444 A.2d 213 (1982)." *State* v. *Edwards*, supra, 214 Conn. 63–64. The jury was not precluded from rejecting the defendant's self-defense claim but finding him not guilty of murder and "determining that he might have had a less culpable, but still criminal, intent." *State* v. *Edwards*, supra, 64. The jury may have concluded that under the circumstances revealed by the evidence, the

defendant's belief that the victim was about to use deadly force upon him necessitating his stabbing of the victim was not reasonable.

We conclude that the trial court properly instructed the jury on the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (1).

### III

Finally, the defendant claims that the trial court failed to instruct the jury on self-defense as it applied to the lesser included offenses. We disagree.

The trial court first instructed the jury on the charge of murder, then on the lesser included offenses and finally on self-defense. The trial court did not limit the applicability of self-defense to any one charge. The trial court concluded its instructions on self-defense by charging the jury: "In summary, you have heard all of the evidence in this case with reference to the defendant's claim of self-defense. The state must disprove this defense beyond a reasonable doubt. If the state has not, you must find the defendant not guilty."

In *State* v. *Williams*, supra, 25 Conn. App. 467, this court concluded that "[t]he failure to discuss self-defense specifically in connection with each lesser included offense . . . was harmless." In *Williams*, the trial court specifically instructed the jury that self-defense was applicable to the charge of murder. That is not the case here.

In this case, the trial court properly instructed the jury on the defendant's claim of self-defense after it had charged the jury on murder and all the lesser included offenses. The trial court did not state that the self-defense charge did or did not apply to any specific charge. The jury was instructed to follow the self-defense charge "in reviewing the evidence in this case."

We conclude that the decisions in *State* v. *Hall*, 213 Conn. 579, 569 A.2d 534 (1990), and *State* v. *Williams*, supra, 25 Conn. App. 467, are controlling. " '[T]he jury's verdict of guilty on the offense of manslaughter in the first degree was necessarily a rejection of the defense of self-defense. . . . [T]he defendant would not have benefited by an instruction that the defense was applicable to the lesser included offenses.' " *State* v. *Williams*, supra, 468; see *State* v. *Hall*, supra, 589. Accordingly, we hold that it is not reasonably possible that the jurors were misled by the trial court's failure to instruct them specifically that they might consider self-defense with respect to each of the lesser included offenses.

The judgment is affirmed.

In this opinion the other judges concurred.